**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| AMBER N. MAUST, o.b.o B.A.W., Jr. ) | |
| ) | CASE NO. 5:13-cv-02353 |
| Plaintiff,           ) | |
| ) | |
| v.                  ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN,        ) | |
| Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant.         ) | |

Plaintiff Amber N. Maust ("Maust"), on behalf of her minor son, B.A.W., Jr. (hereinafter "BW"), challenges the final decision of the Acting Commissioner of Social Security ("Commissioner"), denying BW's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On March 10, 2010, an application was filed on behalf of BW, a child under the age of eighteen, with an alleged disability onset date of March 9, 2010.  (Tr. 27.)  The application was

denied both initially and upon reconsideration.  *Id.*  Maust timely requested an administrative hearing.  *Id.*

On April 25, 2012, an Administrative Law Judge ("ALJ") held a hearing during which BW, represented by counsel, and Maust testified.  (Tr. 27.)  On May 11, 2012, the ALJ found BW did not have an impairment or combination of impairments that met or functionally equaled the listings, and, therefore, was not disabled.  (Tr. 23.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Standard for Disability

To qualify for SSI benefits, an individual must demonstrate a disability as defined under the Act.  "An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C).

To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process.  20 C.F.R. § 416.924(a).  At step one, a child must not be engaged in "substantial gainful activity."  20 C.F.R. § 416.924(b).  At step two, a child must suffer from a "severe impairment."  20 C.F.R. § 416.924(c).  At step three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d).

To determine whether a child's impairment functionally equals the listings, the Commissioner will assess the functional limitations caused by the impairment.  20 C.F.R. §

416.926a(a).  The Commissioner will consider how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [ ]self; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  If a child's impairment results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairments functionally equal the listings and the child will be found disabled.  20 C.F.R. § 416.926a(d).  To receive SSI benefits, a child recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

A "marked" limitation is one which seriously interferes with functioning.  20 C.F.R. § 416.926a(e)(2)(i).  "Marked" limitation means "more than moderate" but "less than extreme."  20 C.F.R. § 416.926a(e)(2)(i).  "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id*.

An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).  An "extreme" limitation means "more than marked."  20 C.F.R. § 416.926a(e)(3)(i).  "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  *Id*.

If an impairment is found to meet, or qualify as the medical or functional equivalent of a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled.  20 C.F.R. § 416.924(d)(1).

### III. Summary of Commissioner's Decision

The ALJ made the following findings in the decision:

1. The claimant was born ... [in] 2004.  Therefore, he was a preschooler on March 10, 2010, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since March 10, 2010, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: attention deficit-hyperactivity disorder, adjustment disorder with mixed disturbance of emotion and conduct, rule out oppositional defiant disorder (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since March 10, 2010, the date the application was filed (20 CFR 416.924(a)).

(Tr. 30, 40.)

## IV.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular

4

conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an

accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## V. Analysis

*Marked Impairments*

The ALJ found that BW had less than marked impairments in three of the six domains: acquiring and using information; attending and completing tasks; and, interacting and relating to others. (Tr. 33-37.) In the remaining three domains, the ALJ found that BW had no limitations. (Tr. 37-40.)

In her first assignment of error, Maust argues that the ALJ erred by finding that BW had less than marked impairments in the domains of acquiring and using information, and attending and completing tasks. (ECF No. 17 at 13.) As such, this Court's analysis will address only these domains. Maust maintains that the ALJ improperly relied on evidence that was in the file prior to 2011, failed to consider evidence of contradictory findings, and failed to accord appropriate weight to teacher questionnaires. *Id*. at 13-15. In a related argument from her second assignment of error, Maust asserts that the ALJ erred by relying on the opinions of the State Agency physicians because they did not have the benefit of BW's most recent records. (ECF No. 17 at 16.) This latter argument will be addressed separately below.

6

To functionally equal the listings, an impairment(s) must be of listing-level severity; i.e. it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. §416.926a(a); Social Security Ruling ("SSR") 09-1p (March 19, 2009). In determining whether a child has a "marked" or "extreme" limitation, the Agency will:

> . . . consider your functional limitations resulting from all of your impairments, including their interactive and cumulative effects. We will consider all the relevant information in your case record that helps us determine your functioning, including your signs, symptoms, and laboratory findings, the descriptions we have about your functioning from your parents, teachers, and other people who know you, and the relevant factors explained in §§ 416.924a, 416.924b, and 416.929.

20 C.F.R. § 926a(e). The factors set forth in §§ 416.924a, 416.924b, and 416.929 include, but are not limited to the following: how well a child can initiate and sustain activities; how much extra help a child needs; the effects of structured or support settings; how a child functions in school; and, the effects of medications or other treatment. *See* 20 C.F.R. § 416.926a(a). In determining whether a child functionally equals a listing, ALJs need not discuss all of the considerations set forth in 20 C.F.R. § 926a and SSR 09-1p; however, they must "provide sufficient detail so that any subsequent reviewers can understand how they made their findings." SSR 09-1p.[1]

The ALJ expressly stated that she considered all the evidence of record, including

---

[1] In assessing functional equivalence, the Agency employs a "whole child" approach. Under this approach, "[w]e focus first on the child's activities, and evaluate how appropriately, effectively, and independently the child functions compared to children of the same age who do not have impairments. 20 CFR 416.926a(b) and (c). We consider what activities the child cannot do, has difficulty doing, needs help doing, or is restricted from doing because of the impairments. 20 CFR 416.926a(a). Activities are everything a child does at home, at school, and in the community, 24 hours a day, 7 days a week." SSR 09-2p. The Agency next evaluates the effects of a child's impairments by rating the degree to which the impairment(s) limits functioning in the six domains. SSR 09-2p.

objective medical evidence, other evidence from medical sources, and information from "other sources" such as family and teachers. (Tr. 30.) An ALJ, however, is not required to discuss each and every item of evidence in the record. *See e.g. Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th Cir. 2004). In assessing whether a child has marked or extreme functional limitations in one of the six domains, an ALJ must "provide sufficient detail so that any subsequent reviewers can understand how they made their findings." SSR 09-1p.

Herein, the ALJ's opinion was sufficiently detailed. In fact, the ALJ relied heavily on BW's education records. (Tr. 34-36, citing Exh. 14E.) Maust's statement – that the ALJ relied solely on evidence in the file prior to 2011 in arriving at her findings as it relates to the two disputed domains – is inaccurate. (ECF No. 17 at 13.) In making her findings, the ALJ explicitly relied on education records from 2012 (Exh. 14E, Tr. 288, 296 ), the IEP from November of 2011, intelligence testing scores as noted in an Evaluation Team Report from no earlier than December 2011 (Exh. 14E, Tr. 234), two teacher questionnaires from April of 2012 (Exh. 14E, Tr. 287-294, 295-302), medical treatment records from 2011 (Exh. 7F, Tr. 354), and other school testing and assessments from 2011 and 2012 (Exh. 14E, Tr. 221-222.)

Maust further asserts that the ALJ did not ascribe appropriate weight to the opinions of BW's teachers. (ECF No. 17 at 14-15.) In the context of children's SSI, Maust argues that the teachers' opinions are akin to treating physician opinions and should be ascribed considerable weight. *Id.* It is not entirely clear from Maust's brief which opinions she believes the ALJ rejected. Nevertheless, even if some were rejected, the opinion of a teacher is not entitled to any particular weight under the regulations, as a teacher does not constitute an "acceptable medical source" but is rather an "other source." *See* 20 C.F.R. § 416.913(d)(2). In support, Maust cites

*Richardson v. Massanari*, 2001 U.S. Dist. LEXIS 17269 (N.D. Iowa Sept. 27, 2001), which noted that "[i]n this sense, a teacher can be aptly analogized to a treating physician whose opinion is given considerable weight in the traditional analysis because of the physician's ongoing relationship with his patient."  This Court has previously rejected such an argument, noting that "[w]hile this Court does not dispute that a teacher's opinion may be significant and, at times, perhaps worthy of more weight than that of a physician or psychologist, neither Sixth Circuit precedent nor the regulations impose any heightened duty of articulation when it comes to consideration of the weight assigned by an ALJ.... [T]he opinions of 'other sources,' such as teachers must only be 'considered.'"  *Clark v. Astrue*, 2013 U.S. Dist. LEXIS 88354 (N.D. Ohio Apr. 10, 2013).  As explained in a recent decision of the Sixth Circuit Court of Appeals, "[a]n ALJ must consider other-source opinions and generally should explain the weight given to opinions for these 'other sources.'  But other-source opinions are not entitled to any special deference."  *Hill v. Comm'r of Soc. Sec.*, 2014 U.S. App. LEXIS 5848 (6th Cir. 2014) (internal citations and quotation marks omitted).

Maust also contends that the ALJ failed to consider evidence that contradicted her findings, presumably referring to the same teachers' opinions.  (ECF No. 17 at 13.)  However, the ALJ did not ignore BW's school records or the statements of education personnel.  In both of the disputed domain findings, the ALJ extensively references school records, including BW's IEP, diagnostic testing, and teacher questionnaires.  (Tr. 35-36.)  Furthermore, Maust does not identify any evidence that plainly undermines the ALJ's finding.  She merely identifies evidence that, in her view, supports a finding of marked impairments.  Maust also offers a different interpretation of the evidence.  Such an argument misconstrues the substantial evidence standard.

9

As outlined in the standard of review section of this Opinion:

> This court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *Branham v. Gardner*, 383 F.2d 614, 626-27 (6th Cir. 1967). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Secretary of HHS*, 966 F.2d 1028, 1030 (6th Cir. 1992). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

*McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). "In other words, the evidence must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Sec. of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986) (internal quotation marks omitted); *accord Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109 (6th Cir. 2010).

Because the Commissioner has a zone of choice, legal error is not established by pointing to evidence that could have resulted in a different outcome. Moreover, Maust asks this Court to consider a *de novo* review of all the evidence of record and come to a different conclusion than the ALJ. That is not this Court's function. While this Court reviews the entire administrative record, it "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 2011 WL 1228165 at * 2 (6th Cir. 2011) (*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 2008 WL 162942 at * 6 (6th Cir. 2008) (stating that "it squarely is not

the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.")

The Court cannot find that the ALJ violated any procedural requirements when considering BW's school records. Furthermore, the ALJ's findings in the two disputed domains were supported by substantial evidence of record and were sufficiently explained. The findings reflected that the ALJ considered a vast array of evidence of record. As such, Maust's first assignment of error is without merit.

*State Agency Consultants*

Turning to Maust's second assignment of error, Maust asserts that the opinions of State Agency consultants could not constitute substantial evidence because those sources did not have access to BW's most recent records. (ECF No. 17 at 16.) After observing that no treating or examining physician opined that BW satisfied the requirements of any listed impairment, the ALJ expressly afforded "considerable weight" to the opinions of State Agency medical consultants Todd Finnerty, Psy.D., and Caroline Lewin, Ph.D., who both found that BW had less than marked impairments in the domains of acquiring and using information, and attending and completing tasks. (Tr. 30, 32, 324-329, 345-350.) Pursuant to the regulations, an ALJ *must* consider such opinions, along with the opinions of the other medical sources of record:

> 2) Administrative law judges are responsible for reviewing the evidence and making findings of fact and conclusions of law. They will consider opinions of State agency medical or psychological consultants, other program physicians and psychologists, and medical experts as follows:
>
> (i) Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. **State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also**

11

> **experts in Social Security disability evaluation. Therefore, administrative law judges** *must consider findings and other opinions* **of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence**, except for the ultimate determination about whether you are disabled (see § 404.1512(b)(8)).
>
> \* \* \*
>
> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527(e)(2) & 416.927(e)(2) (emphasis added).

The Court finds nothing inappropriate in the ALJ ascribing considerable weight to the opinions at issue. These opinions constitute substantial evidence capable of supporting the ALJ's decision as to BW's limitations in the two domains at issue. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877 at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313 at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D.Tex. Sept.8, 2011) (state agency expert

medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.") The Court agrees with these statements, especially where a plaintiff fails to identify any treating or examining source opinion that conflicts with the State Agency consultants' assessments.

Maust, however, suggests that the ALJ's decision to credit the State Agency opinions was erroneous because the State Agency consultants did not have the benefit of reviewing some of BW's more recent medical and school records. (ECF No. 17 at 16.) Maust, however, does not cite any supporting law or regulation. Furthermore, Maust fails to explain how these recent records are inconsistent with the State Agency's consultants' opinions. *Id*. It is not the Court's function to comb through the entire record to develop an argument on her behalf. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Moore v. Comm'r of Soc. Sec.*, 2014 WL 3843791 at *4 (6th Cir. Aug. 5, 2014) (deeming the plaintiff's argument waived as it lacked detail or development); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 447 F.3d 861, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). As such, the second assignment of error is deemed waived.

### *Credibility*

In her final assignment of error, Maust argues that the ALJ erred by discrediting her testimony and failing to perform a proper credibility analysis. (ECF No. 17 at 16-18.)

"There is no question that subjective complaints of a claimant can support a claim for

13

disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. 20 C.F.R. § 416.929; *see, e.g., Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability"). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p. Essentially, the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of the symptoms or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling symptoms. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

If the claims are not substantiated by the medical record, the ALJ must make a credibility determination based on the entire case record. *Id*. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision

must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *accord Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.") Beyond medical evidence, there are seven factors that the ALJ should consider.[2] "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

    The ALJ's credibility analysis is rather brief:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or

---

[2] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

> combination of impairments that functionally equals the listings for the reasons explained below.

(Tr. 31.)

Here, BW, not Maust, is the claimant. The question then is whether the above requirements also apply to a minor claimant's parent. Maust's brief fails to identify any controlling law on this issue. However, the regulations state as follows:

> (a) Symptoms are your own description of your physical or mental impairment. If you are a child under age 18 and are unable to adequately describe your symptom(s), we will accept as a statement of this symptom(s) the description given by the person who is most familiar with you, such as a parent, other relative, or guardian. Your statements (or those of another person) alone, however, are not enough to establish that there is a physical or mental impairment.

20 C.F.R. § 419.928(a).

As BW was only five years old on his alleged onset date and six at the time of the hearing, the Court finds that the ALJ should have considered Maust's description of BW's symptoms as coming from the claimant. It appears that the ALJ did, in fact, consider all statements concerning the intensity, persistence, and limiting effects of BW's symptoms – including those made by Maust. (Tr. 31.) Nonetheless, Maust's argument fails to identify a single, specific statement or portion of her testimony that conflicts with the ALJ's findings. (ECF No. 17 at 16-18.) Maust simply concludes, without explanation, that the ALJ's findings of less than marked limitations in the domains of acquiring and using information and attending and completing tasks were contrary to her own testimony and reports. *Id*. at 17. Maust also avers that her observations and those of BW's teachers were "similar" and "consistent," and were believed by BW's doctors. *Id*. at 18.

Maust, however, fails to point to any specific portions of her testimony or reports that the

16

ALJ allegedly rejected. The Court cannot discern which portions of Maust's testimony or reports she believes clearly conflict with the finding that BW has less than marked limitations in the two domains that are in dispute. In other words, though Maust plainly believes BW is disabled, she fails to identify any factual allegation from the record recounting symptoms of disabling severity. Maust is essentially asking this Court to scour the record to find an inherent inconsistency between the ALJ's conclusions and something she stated either at the hearing or in the record. That task, however, is not the role of the Court. Because Maust fails to identify any portion of her testimony that the ALJ rejected as not credible, her argument that the credibility analysis was inadequate fails.

## VI. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: September 29, 2014